UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THOMAS W. FOREMAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-00920-RLY-DKL |
| | ) | |
| GREEN TREE SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

Thomas W. Foreman, Jr., Plaintiff, filed this class action Complaint against Green Tree Servicing, LLC, Defendant, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. This matter now comes before the court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, the court **GRANTS** Defendant's motion.

**II. Legal Standard**

Rule 56(a) authorizes the court to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is required to enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially, the moving party bears the burden of demonstrating the basis for its motion by citing to specific materials in the record (e.g., depositions, documents, affidavits, admissions, interrogatories) that demonstrate an absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c)(1)(A). The burden then shifts to the nonmoving party: "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

In reviewing a motion for summary judgment, the court typically construes the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). Yet, "When the non-movant fails to comply with the district court's procedures for handling summary judgment motions, however, the non-movant may as a practical matter lose much of the benefit of that rule." *Id.* In this case, Plaintiff offered no response whatsoever to Defendant's motion.[1] Under these circumstances, the court may proceed as if Plaintiff has admitted Defendant's version of the material facts. *Id. See* Fed. R. Civ. P. 56(e); S.D. Ind. L.R. 56-1(f).

---

[1] Pursuant to the Magistrate Judge's Order of July 17, 2015, Plaintiff was required to file a response by August 14, 2015. (Filing No. 59). As of the date of this Entry, Plaintiff has not filed a response or a motion for leave to file a belated response.

**III. Statement of Material Facts Not in Dispute**

In 2006, Plaintiff and his then-wife Laura obtained a home-equity line of credit from Aegis Funding, d/b/a Aegis Home Equity ("Aegis"). (Filing No. 40-2, Home Equity Line of Credit Agreement). Plaintiff and Laura immediately borrowed $20,000 on that line of credit. (Filing No. 40-1, Deposition of Plaintiff at 15:7-13). Plaintiff testified that he understood the debt to Aegis was a joint debt, and that both he and Laura were responsible for repaying the full amount. (*Id.* at 17:2-15). Servicing of the loan was later assigned to Defendant. (Filing No. 40-4, Transfer Letter).

Plaintiff and Laura divorced in 2007. (Filing No. 40-3, Settlement Agreement). According to the Settlement Agreement, Laura was to refinance the home-equity line of credit and remove Plaintiff's liability on the debt. She never did that. (Plaintiff Dep. at 22:14-24). Plaintiff conceded that he did not make any payments on the debt after the divorce. (*Id.* at 24:13-15).

The account became delinquent, and Defendant eventually charged the debt off[2] in January 2010. (Filing No. 40-5, Accelerated Collection Letter). Laura then filed Chapter 13 bankruptcy in April 2010. (Filing No. 40-6, Chapter 13 Plan). She listed the debt serviced by Defendant in the schedules to her bankruptcy petition. At the time of Laura's bankruptcy petition, Plaintiff was aware that he was still liable for the debt. (Plaintiff Dep. at 29:25-30:2).

---

[2] *See charge off*, Black's Law Dictionary (10th ed. 2014) ("To treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt.").

3

In the spring of 2012, Plaintiff applied for a mortgage loan with Caliber Funding. (*Id.* at 36:3-15). Caliber denied Plaintiff's application. (*Id.* at 36:8-10). Plaintiff claims a Caliber employee told him that his application was denied because the debt serviced by Defendant showed up on his credit report as being included in a bankruptcy. (*Id.* at 37:2-21). Yet, Plaintiff subsequently obtained copies of the credit reports that Caliber requested from the credit-reporting agencies ("CRAs"), and he admitted that none of them stated the debt was "included in bankruptcy." (*Id.* at 55:2-17, 59:16-60:3, 70:12-19, 70:23-72:1, 74:24-76:12, 77:24-78:25, 81:3-10; Filing No. 40-7, August 24, 2012 Credco Credit Report at 362; Filing No. 40-8, August 7, 2012 Credco Credit Report at 89; Filing No. 40-9, August 2012 TransUnion Credit Report at 99; Filing No. 40-10, August 2012 Experian Credit Report at 121-22; Filing No. 40-11, August 2012 Equifax Credit Report at 215-16). Instead, all of the credit reports showed that Defendant had reported the debt as past-due and charged off. (*Id.*).

On October 16, 2012, Plaintiff, through counsel, lodged a dispute with the CRAs, contesting the accuracy of credit information reported by Defendant and two other creditors. (Filing No. 40-14, First Letter to CRAs). With regard to the debt at issue, Plaintiff's counsel alleged that the balance, date opened, credit limit, current status, and amount past due, *inter alia*, were inaccurate. The letter did not include any mention of Defendant reporting the debt as "included in bankruptcy."

Defendant investigated Plaintiff's dispute. (Filing No. 40-21, Investigation Report). In November 2012, Defendant changed its reporting to the CRAs to reflect that the debt was "included in bankruptcy." (*Id.*). In response, TransUnion removed the prior

4

charged off notation and replaced it with "Account Included in Bankruptcy." (Filing No. 40-15, November 2012 TransUnion Credit Report at 49). TransUnion added, "Remarks: CHAPTER 13 BANKRUPTCY." (*Id.*).

Plaintiff has never filed for bankruptcy. (Complaint at ¶ 23). However, Plaintiff conceded that the debt serviced by Defendant was, in fact, included in a bankruptcy: Laura's. (Plaintiff Dep. at 85:25-86:2).

In February 2013, Plaintiff, through counsel, again wrote a letter of dispute to the CRAs. (Filing No. 40-16, Second Letter to the CRAs). In this letter, Plaintiff's counsel complained for the first time about the Chapter 13 bankruptcy remark. The CRAs notified Defendant of the dispute, and Defendant conducted a second investigation. Following that investigation, the CRAs then updated their reports as follows:

Experian changed its report of debt serviced by Defendant to state "opened/never late." (Filing No. 40-17, February 2013 Experian Credit Report at 180). Plaintiff acknowledged that this was "a positive entry [and] there's nothing negative about it." (Plaintiff Dep. at 93:7-10). He testified that this was how he wanted Defendant to report the debt. (*Id.* at 93:11-12).

Equifax/CSC changed its report of the debt to list a charge-off amount of zero, with no reference to bankruptcy. (Filing No. 40-18, March 2013 Equifax/CSC Credit Report at 9). Plaintiff agreed that this is how he wanted Defendant to report the debt. (Plaintiff Dep. at 97:8-9).

TransUnion deleted the debt from its report in its entirety, and therefore reported nothing about a bankruptcy. (Filing No. 40-19, March 2013 TransUnion Credit Report at

5

2). Plaintiff testified that he had no objection to TransUnion simply removing the debt from his credit report. (Plaintiff Dep. at 99:15-19).

Plaintiff is not aware of any CRA that has reported the debt serviced by Defendant as being "included in bankruptcy" since March 2013. (*Id.* at 104:22-105:6).

After his May 2012 mortgage application with Caliber, Plaintiff did not apply for more credit until April 2013, when he applied for a car loan through Subaru. (*Id.* at 43:21-44:13, 48:14-24). Plaintiff got the loan he wanted, subject only to his fiancée agreeing to co-sign on the loan. (*Id.* at 44:23-45:19). Plaintiff concedes that no creditor ever mentioned the debt serviced by Defendant or a bankruptcy remark during the application process. (*Id.* at 105:21-25).

**IV. Discussion**

According to the Complaint, Plaintiff filed this action pursuant to 15 U.S.C. § 1681s-2. This statute creates two duties for entities that furnish consumer-credit information to CRAs ("furnishers"). Subsection A requires furnishers "to provide accurate information" to CRAs, while Subsection B sets forth obligations for a furnisher "upon notice of dispute" lodged with a CRA by a consumer. It is well established that Subsection A "does not create a private right of action." *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011). Thus, the court proceeds as if Plaintiff has alleged a violation of Subsection B.

Subsection B provides that "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a [furnisher] to a consumer reporting agency," the furnisher is required to (1) "conduct an investigation with respect

6

to the disputed information"; (2) "review all relevant information provided by the consumer reporting agency"; (3) "report the results of the investigation to the consumer reporting agency"; (4) "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [furnisher] furnished the information; and (5) "if an item of information disputed by a consumer is found to be inaccurate or incomplete . . . promptly modify that item of information, delete that item of information, or permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1).

The narrow issue before this court is whether Defendant violated 15 U.S.C. § 1681s-2(b) when it conducted its two investigations in October/November 2012 and February 2013. In resolving this dispute, the court is guided by the legislative purpose of the FCRA, which is "to require that consumer reporting agencies adopt *reasonable* procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b) (emphasis added). "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Defendant maintains that it was in compliance with each of the requirements set forth in Subsection B. The court has reviewed the only evidence before it (i.e., the exhibits cited by Defendant in its briefing), and finds the same. Plaintiff lodged two

7

formal complaints with the CRAs, and Defendant conducted an investigation each time. After the first investigation, TransUnion[3] changed its reporting of the debt serviced by Defendant from charged off to "included in bankruptcy."[4] (*Compare* August 2012 TransUnion Credit Report at 99 *with* November 2012 TransUnion Credit Report at 49). The obvious argument that Plaintiff would raise here, had he filed a brief, would be that this "included in bankruptcy" notation shows Defendant's investigation was unreasonable because it is undisputed that Plaintiff has never filed for bankruptcy. It goes without saying that declaring bankruptcy can have a significantly negative impact on the ability to get credit. However, the "included in bankruptcy" remark is *technically* accurate, as, even though Plaintiff has never declared bankruptcy, the loan was in fact included in Laura's Chapter 13 bankruptcy.[5] Plaintiff conceded this much. (Plaintiff Dep. at 85:25-

---

[3] The court has no evidence of how, if it all, the other CRAs changed their reports following Defendant's first investigation.

[4] Plaintiff claims that Caliber denied his mortgage application because a credit report issued in August 2012 indicated that the debt serviced by Defendant was "included in bankruptcy." There is no evidence to support this though. Rather, the credit reports from that month all show that the debt was charged off. (August 24, 2012 Credco Credit Report at 362; August 7, 2012 Credco Credit Report at 89; August 2012 TransUnion Credit Report at 99; August 2012 Experian Credit Report at 121-22; August 2012 Equifax Credit Report at 215-16). It was not until November 2012, after Defendant's first investigation, that any of the CRAs included a bankruptcy notation. (November 2012 TransUnion Credit Report at 49). Regardless, this contention is immaterial to the court's analysis because "[f]urnishers of information . . . are accountable under § 1681s-2(b) only if they continue to supply inaccurate data to credit reporting agencies after proper notification by the CRA." *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005). Thus, Defendant's liability under Subsection B hinges upon the action it took after Plaintiff disputed the information in October 2012 and February 2013, not whether the information was accurate in August 2012.

[5] As Defendant notes, Plaintiff might have advanced a compelling argument that there is a factual issue as to whether the "included in bankruptcy" notation, while technically accurate, was nevertheless misleading to creditors. Many federal circuit courts of appeals have held that the statutory term "inaccurate" includes information that is literally correct but still misleading. *See e.g., Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A credit entry may be

86:2). Furthermore, Plaintiff agreed that he was personally liable on the debt because Laura never refinanced it, despite being required to do so pursuant to the Settlement Agreement. (*Id.* at 29:25-30:2).

After Defendant's second investigation, none of the CRAs showed that the debt was "included in bankruptcy." (February 2013 Experian Credit Report at 180; March 2013 Equifax/CSC Credit Report at 9; March 2013 TransUnion Credit Report at 2). Thus, it is unlikely that Plaintiff filed his Complaint to redress errors associated with this investigation, as he was content with the results. (Plaintiff Dep. at 93:11-12, 97:8-9, 99:15-19). However, the court questions why the CRAs produced a different report after Defendant's second investigation when there are no facts to suggest that the status of the debt had changed between November 2012 and February/March 2013. It seems unlikely that all three of the CRAs would have suddenly changed their description of the loan without a notice from Defendant to do so. That begs the question of why Defendant concluded that it needed to report Plaintiff's debt in a different way. Defendant noticeably fails to address this in its briefing. From these facts, one might speculate that

---

'inaccurate' within the meaning of the statute . . . because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."). However, the Seventh Circuit has twice declined to address this question. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 n.4 (7th Cir. 1994). With no argument from Plaintiff that this interpretation of "inaccurate" is proper, the court declines to weigh in on the issue. *See Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013) ("[W]e have long held that a district court is not required to scour the record looking for factual disputes or to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (internal quotation marks and brackets omitted).

Defendant realized its first investigation was unreasonable and then attempted to remedy its error in the second investigation. However, "guesswork and speculation are not enough to avoid summary judgment." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012). The change in the credit reports does not necessarily indicate that Defendant failed to conduct a proper investigation in October/November 2012. Defendant might have simply opted to change the way it reported the loan in hopes of avoiding timely and costly litigation, despite being in compliance with the FCRA before.[6] With no argument from Plaintiff on this issue and no objective evidence to suggest that Defendant acted unreasonably, the court holds that Defendant's two investigations were in compliance with 15 U.S.C. § 1681s-2(b)(1). Summary judgment for Defendant is therefore required.

## V. Conclusion

For the foregoing reasons, the court **GRANTS** Defendant's Motion for Summary Judgment. (Filing No. 38).

**SO ORDERED** this 30th day of September 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

[6] At least three federal courts have suggested that Defendant's reporting of the debt as "included in the bankruptcy" under these circumstances is proper. *See Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 646 (S.D. Ala. 2007); *Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1240-41 (N.D. Ala. 2002).